NA25menC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,                New York, N.Y.

4              v.                             23 Cr. 490 (SHS)

5    ROBERT MENENDEZ,
     NADINE MENENDEZ,
6    WAEL HANA,
     JOSE URIBE,
7    FRED DAIBES,

8

                   Defendants.
9
     ------------------------------x

10
                                             October 18, 2023
11                                           2:00 p.m.

12

13   Before:

                        HON. SIDNEY H. STEIN,
14
                                             U.S. District Judge
15

16

17                         APPEARANCES

18   DAMIAN WILLIAMS
          United States Attorney for the
19        Southern District of New York
     BY:  PAUL M. MONTELEONI
20        ELI J. MARK
          DANIEL C. RICHENTHAL
21        Assistant United States Attorneys

22   WINSTON & STRAWN, LLP
          Attorneys for Defendant Robert Menendez
23   BY:  DAVID A. KOLANSKY

24          (Appearances continued next page)

25

NA25menC

1                                APPEARANCES

2    SCHERTLER, ONORATO, MEAD & SEARS, LLP
          Attorneys for Defendant Nadine Menendez
3    BY:  DANNY C. ONORATO

4    GIBBONS, P.C.
          Attorneys for Defendant Wael Hana
5    BY:  LAWRENCE S. LUSTBERG
          ANNE M. COLLART
6         RICARDO SOLANO, JR.

7    KASOWITZ, BENSON, TORRES, LLP
          Attorneys for Defendant Jose Uribe
8    BY:  MARC E. KASOWITZ
          DANIEL FETTERMAN
9         FRIA R. KERMANI

10   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
          Attorneys for Defendant Fred Daibes
11   BY:  ROBERTO FINZI
               -and-
12   ARLEO & DONOHUE, LLC
     BY:  KAMRON SHARIF

13
     ALSO PRESENT:  Tracee Mergen, Special Agent (FBI)
14                  Ryan Larkin, Special Agent (FBI)

15

16

17

18

19

20

21

22

23

24

25

NA25menC

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your names

3     for the record.

4          MR. MONTELEONI:  Good morning, Paul Monteleoni for the

5     government.  With me at counsel table are my colleagues, Eli

6     Mark and Daniel Richenthal, as well as special agents Tracee

7     Mergen and Ryan Larkin, from the FBI.

8          THE COURT:  Good afternoon.

9          MR. KOLANSKY:  Good afternoon, your Honor.  David

10    Kolansky from Winston & Strewn on behalf of Senator Menendez.

11         THE COURT:  Good afternoon.  You asked that Senator

12    Menendez be excused, correct?

13         MR. KOLANSKY:  Correct, your Honor.

14         THE COURT:  I've granted that, and we have another

15    date for his arraignment.

16         MR. KOLANSKY:  Correct.  Monday, your Honor.

17         THE COURT:  All right.  Thank you.

18         MR. ONORATO:  Good afternoon, your Honor.  Danny

19    Onorato on behalf of Nadine Menendez, who is with me at

20    counsel's table.

21         THE COURT:  All right.  Good afternoon.

22         MR. LUSTBERG:  Good afternoon, your Honor.  Lawrence

23    S. Lustberg from Gibbons, P.C., on behalf of defendant Wael

24    Hana.  Mr. Hana is here.  With me are my colleagues Anne

25    Collart and Ricardo Solano.

NA25menC

1           THE COURT:  All right.  Good afternoon.

2           MR. KASOWITZ:  Good afternoon, Marc Kasowitz,

3  Kasowitz, Benson & Torres for Mr. Uribe, and I have with me Dan

4  Fetterman.

5           MR. FETTERMAN:  Good afternoon, your Honor.

6           THE COURT:  All right.  Good afternoon.

7           Mr. -- I'm sorry.  Let's finish.

8           MR. FINZI:  Good afternoon, your Honor.  Roberto Finzi

9  for Fred Dabies, who is next to me here in court.  Along with

10  me are Richard Carlo and Kamron Sharif.

11          THE COURT:  Good afternoon.  Please be seated.

12          Mr. Kasowitz, your recently, and your firm entered a

13  notice of appearance here, correct, for Mr. Uribe?

14          MR. KASOWITZ:  That's correct, your Honor.

15          THE COURT:  Please make sure that you make contact

16  with the classified information security person and file -- get

17  your application in for security clearance.  That's the

18  classified information security officer.  The government can

19  give you the name and the contact information.  Try to get your

20  application or applications in this week if you can.

21          MR. KASOWITZ:  We will do that, your Honor.

22          THE COURT:  All right.  Because everybody else already

23  has their applications in.

24          All right.  Government, tell me what the status of

25  discovery is here.  Let me tell you what my notes say:  That

NA25menC

1 the last time we met, you were waiting for the entry of a

2 protective order.  I entered that protective order on October

3 6.

4    You indicated that you then were going to produce

5 documents that were intended to be among the highest priority

6 documents on a searchable base, and then the next tranche was

7 going to be the bulk of the documents that were obtained

8 pursuant to grand jury subpoenas.  It looks like that was

9 pending a QC, which I take is a quality control review, so

10 presumably that already is on its way.  That's what my notes

11 indicate.

12    Talk to me as to what is actually happening.

13    MR. MONTELEONI:  Yes, your Honor.

14    We have been working diligently to produce discovery

15 on the schedule set by the Court, and consistent with our

16 discussion at the last conference to prioritize the most

17 significant material first.  Our productions so far cover more

18 than 150,000 pages of documents, though that's a significant

19 undercount, because it includes materials from 27 different

20 electronic devices and accounts that did not lend themselves to

21 full pagination.

22    So the first production that we talked about last

23 time, we made that on October 6, the date the protective order

24 was entered.  That was about 77,000 pages of documents.  The

25 next week we produced responsive materials from two electronic

NA25menC

1    devices.  That was on October 12.  Then this week we produced

2    responsive materials from 25 different accounts and devices,

3    and that includes materials from devices and accounts that were

4    used by four of the defendants.

5         This is a part of our rolling production of responsive

6    materials that we've identified pursuant to the search warrants

7    in this case.  It's not all of the responsive material.  Our

8    review, as we discussed last time, continues, but consistent

9    with the Court's directive to prioritize, we've made a very

10   substantial production this week, including a number of

11   communications between the defendants and between

12   co-conspirators, material that we consider very significant to

13   the trial of this action.  It's not everything.  It's not even

14   everything significant.  We think that it's going to

15   tremendously assist counsel in the defense of this action.

16        THE COURT:  Now, do I understand, because you

17   originally told me you had approximately 50 electronic devices,

18   are you saying that you've made the production of 29 of those

19   50 already?

20        MR. MONTELEONI:  No.  So we've made the production of

21   responsive sets from two of the devices where the review is

22   complete.  That was last week on October 12.  Then the next 25

23   devices are partial identifications of responsiveness material

24   for devices where the review for those devices continues.

25        So we collected some of the material that we had

NA25menC

1    already identified as among the responsive material.  However,

2    we're continuing to review even those devices for additional

3    responsive material.  However -- as I said, I do believe that

4    yesterday's production of this material was highly significant.

5          We've also produced to the defendants their own

6    electronically stored information, with one or two exceptions,

7    which we will, you know, get out to the defendants shortly.

8    The large production that we discussed, that you referenced, we

9    submitted that to our vendor following the quality control

10    final checks that I talked about within two days of the

11    conference.  The vendor has been processing it, and as I

12    understand it, is in the process of exporting it now.  That

13    production is 7.7 million pages, so that export process takes

14    some time.

15          THE COURT:  What is exporting?

16          MR. MONTELEONI:  So exporting is moving it from the

17    vendor's platform into a form in which we can then copy it to

18    the defense.  So that process, we think for a production of

19    this volume, perhaps around half a terabyte, may take a little

20    bit of time, but they are, essentially, almost done with what

21    they need to do.  So we'll have that 7.7 million pages out to

22    the defense soon.

23          THE COURT:  Well, can you put a timeframe on it?

24          MR. MONTELEONI:  Based on the information I have --

25          THE COURT:  If you can't, you can't.

NA25menC

1          MR. MONTELEONI:  -- that I got from the vendor this

2     morning, I can't; but I expect it's going to be soon.  This is

3     in the very late stages.  It's just a very large project.

4          THE COURT:  All right.

5          MR. MONTELEONI:  These things take time.

6          And of course that's not everything.  We're continuing

7     both our responsiveness review of the devices and also our

8     general productions of discoverable information, and we're

9     targeting December 4th as you've directed.

10          THE COURT:  Thank you.

11          I think it sounds like the government is definitely

12     making a good faith effort to keep to the schedule, and it

13     sounds like you're on schedule.  Thank you.

14          Let me turn now to the bail application of Mr. Hana.

15     As I understand it, this is document 78, Mr. Lustberg, what

16     you're asking me for, you can correct me if I'm wrong, is the

17     removal of the ankle bracelet, as a condition of pretrial

18     release, from Mr. Hana; and you say that the GPS monitor's been

19     extremely uncomfortable, and even painful for Mr. Hana over the

20     past three weeks since it was applied.

21          Basically, you're requesting that the GPS monitor be

22     removed because, if I understand correctly, he voluntarily

23     returned here from Egypt; his wife and young daughters have

24     applied for a visa to come here; he was residing in Egypt with

25     them, but they've applied for a visa, and you expect them to

NA25menC

being coming here; and, thirdly, she's been scheduled for an

interview with the U.S. Consulate, so you think it's going to

happen soon.

     Is that basically it?  You tell me whatever you like,

sir.

     MR. LUSTBERG:  Thank you, your Honor.

     I think the Court has summarized it well.  It's a

pretty extraordinary case.  Following Mr. Hana's indictment,

when he was told about it, he immediately, and when I say

immediately, within moments made flight reservations to come

back here, even after the government informed us that he would

be arrested at Kennedy Airport upon his arrival, he still came,

and he did that notwithstanding that there's -- he may not even

be extraditable.  He's here to face these charges.  His family

is joining him.  He has a residence here.  He has an office

here.

     I think the government's concern at the outset was

perhaps when discovery began to come in, he would change his

attitude about staying here.  Discovery, as the Court has

just -- per the colloquy that the Court just had with the

government, we've begun to receive it.  We've begun to go over

it with him.  He remains resolute about staying here.

     Let me be clear that he has -- we're not asking for

relief from any other conditions of his release.  He has

surrendered all travel documents.  In fact, he found another

NA25menC

1    travel document, which we surrendered --

2            THE COURT:  I saw.

3            MR. LUSTBERG:  -- to pretrial just today.  He's going

4    nowhere.  And the Court of course knows the standard.  It

5    should -- we believe that the GPS is a condition that's simply

6    not necessary to secure his attendance at trial, or the safety

7    of the community.

8            And it is uncomfortable.  I mean, it buzzes all night

9    while he's trying to sleep.  It doesn't make it easy for him to

10   be awake and alert when we meet with him.  And I have this

11   experience with other clients, I should say.  It's just an

12   inconvenient thing that he doesn't need.  He has a curfew.

13   He's willing to abide by that curfew.  There are alternatives

14   in terms of assuring that he does abide by that curfew, phone

15   calls, or the like, with pretrial services.  We're happy to

16   work all that out.  But this is just a -- it's an onerous

17   condition that -- for sure it's not as onerous as being in

18   custody, but it's an onerous condition that we just feel,

19   respectfully, is not -- is just simply not necessary under

20   these unique circumstances where he voluntarily returned to

21   this country to face these charges, and has to remain here,

22   because he has no ability to leave.  So we would ask for that

23   modest --

24           THE COURT:  What do you mean has to remain here

25   because he has no ability --

NA25menC

1          MR. LUSTBERG:  Because he's surrendered all his

2    documents -- he has no passport.  He has no travel documents.

3    He has no way to leaving the country even if he wanted to.  And

4    there are other alternatives to assure that the government

5    knows, or that pretrial knows his whereabouts, that don't

6    require that he have this monitoring 24/7.

7          THE COURT:  What are those?

8          MR. LUSTBERG:  There could be phone calls.  There

9    could be random checks.  There's all kinds of mechanisms.  And

10   we'd be happy to work with pretrial to work those out.

11         THE COURT:  Let me ask you a couple of questions, and

12   then I'll hear from the government.

13         I guess the first is a statement of the scores of

14   people who have come before me, and had the GPS monitors

15   applied, nobody has brought to my attention that it was

16   extremely uncomfortable and even painful.  That doesn't mean it

17   wasn't uncomfortable.  I'm just saying it's never risen to the

18   level of anyone bringing it to my attention.

19         Is there something unusual here that I should know

20   about?

21         MR. LUSTBERG:  No.  I mean, I've looked at this

22   device.  I've seen it on other people.  I actually, your Honor,

23   have had a similar experience to you, that often people don't

24   complain about it, but in most cases the reason for that is

25   they'd rather be on GPS monitoring than sitting in custody in

NA25menC

1    the Metropolitan Detention Center.

2            But here, his detention really was not in the cards,

3    and our view is that it's gratuitous.  It's, you know --

4            THE COURT:  Unnecessary, it's not the least

5    restrictive?

6            MR. LUSTBERG:  Correct.

7            THE COURT:  I understand.

8            Last question, you suggest he may not even be

9    extraditable.  I haven't read that extradition treaty with

10   Egypt, but at least according to your submission here he hasn't

11   been indicted for an extraditable crime according to this --

12   what you've set forth.  Is that true?

13           In other words, were he to go back to Egypt, where his

14   wife and children are, and I take it he's a citizen both of

15   Egypt and of the United States; is that correct?

16           MR. LUSTBERG:  Yes, your Honor.  Yes.

17           THE COURT:  Then at least according to what I have

18   here, he could not be extradited back here; is that correct?

19           MR. LUSTBERG:  That's our -- that was the

20   information -- look, I've not done -- to be completely candid

21   with the Court, I've not done a real deep dive.

22           THE COURT:  I understand.  You haven't parsed the

23   treaty.

24           MR. LUSTBERG:  I've literally looked at the list of

25   offenses in the treaty, and the significance of it to us -- and

NA25menC

1    I would understand the Court's concern, that if he went back

2    there, then it would be difficult to get ahold of him, but the

3    truth is he knew that and came here.  And so it goes to the

4    good faith of his journey to the United States in order to face

5    these charges, which he's looking to defending himself on and

6    believes that he will be acquitted of.

7            THE COURT:  What about a possible change of heart as

8    this case proceeds?

9            MR. LUSTBERG:  Well, even if he had a change of heart,

10   it would be awfully difficult for him to leave without travel

11   documents.  Travel is limited, and his -- and he's posted

12   property.  Presumably by then his family will be here as well,

13   and so there are many other protections that are -- that are in

14   place to prevent that -- to prevent his flight.

15           THE COURT:  All right.  Thank you.

16           Let me hear from the government.

17           MR. RICHENTHAL:  Good afternoon, your Honor.

18           I want to start --

19           THE COURT:  Tell me who you are, sir, so the record is

20   clear.

21           MR. RICHENTHAL:  Daniel Richenthal.

22           THE COURT:  Yes, sir.

23           MR. RICHENTHAL:  I just want to start briefly with the

24   suggestion that the bracelet's uncomfortable.  We accept in

25   good faith that may be so, and we would encourage Mr. Lustberg

NA25menC

1    to work with his client and pretrial services to resolve it.

2    Maybe it can be moved to a different location.  Maybe it can be

3    moved to a different ankle.  I don't know.  But that aside,

4    there's nothing in this application that is new or material or

5    warrants this change.

6         And let me just step back for a second and talk about

7    what this case is about as to Mr. Hana.  I will note that

8    pretrial services opposes the removal of the GPS, and we do as

9    well, for multiple reasons.  So Mr. Hana, according --

10        THE COURT:  Well, I don't have that before me.

11   Pretrial services has opposed it in this case specifically?

12        MR. RICHENTHAL:  This morning, your Honor, my

13   colleague, Mr. Marks, spoke with the assigned pretrial services

14   officer, and we were informed in sum that they oppose removal

15   of the GPS.

16        THE COURT:  All right.

17        MR. RICHENTHAL:  I'm sure pretrial would be happy to

18   speak to the Court if the Court has questions.

19        But, in sum, the reason we oppose it, and the reason

20   we understand pretrial opposes it is Mr. Hana has,

21   conservatively, in excess of $25 million in net worth, the

22   overwhelming majority of which is abroad in Egypt and in

23   Uruguay, that includes multiple commercial properties.  In each

24   of those two countries at a minimum, he has commercial

25   properties themselves worth millions of dollars, as well as

NA25menC

1    other assets.  He is deeply connected, as alleged in the

2    superseding indictment, to the Egyptian Government, and

3    specifically to Egyptian intelligence officers.

4         So while we hope that Mr. Hana does not intend to flee

5    the United States, were he to try to do so, common sense alone

6    would tell you he might well have the assistance of folks to

7    get him a passport, so the mere surrender of his travel

8    documents is not sufficient.  The reason we agreed to negotiate

9    a bail package, and that's what this is, is that Mr. Hana

10   returned voluntarily; but that agreement was predicated on two

11   key things, and he's now proposing to remove the most important

12   of the two, while not substituting anything in its place.

13   Those two key things were a substantial bond, $5 million,

14   secured by both cash and assets.  That's been done.  And, and

15   this is in our judgment the most important, GPS.  And the

16   reason it's most important is what I just said.  He has tens of

17   millions of dollars at his disposal outside the United States

18   in two different countries.  He's connected to a foreign

19   government in general, and intelligence officers in particular.

20   And in light of the superseding indictment, of which he was not

21   aware at the time he came here, and which adds a new charge,

22   and in light of discovery, of which he was not aware at the

23   time he came here, his incentives, in our judgment, have

24   markedly changed.  For all those reasons, the Court should deny

25   this application.

NA25menC

1          The only truly new information of everything I've said

2     is this idea that his family may come here.  I don't know if

3     that's true.  I don't know if it's not true.  What I do know is

4     it hasn't happened yet.  So even if the Court were inclined to

5     make some sort of modification on that basis, and we'd urge

6     your Honor not to do so without at least some form of

7     additional conditions, it's premature.  At this stage, on this

8     record, the condition should remain in place.

9          THE COURT:  All right.  Thank you.

10          Mr. Lustberg, did you want a quick reply?

11          MR. LUSTBERG:  Yes.  Very briefly, your Honor.  It is

12     an extraordinary thing --

13          THE COURT:  What the U.S. Attorney was doing really

14     was going to -- it seems to me, going to the possibility of a

15     change of heart as things go forward.

16          MR. LUSTBERG:  Your Honor, fair enough.

17          Your Honor, it's not appropriate for me to testify

18     here about -- with regard to what Mr. Hana would say, but if

19     you were to question him, what he would tell you is having

20     reviewed the superseding indictment, having reviewed all of the

21     discovery in this matter, understanding the breadth of the

22     allegations and the scope of the proofs against him, he is

23     absolutely resolute about staying here.  He wishes to face the

24     charges.

25          If the Court wishes to wait on this application, which

NA25menC

1    I don't think it needs to under the standard set forth in the

2    Bail Reform Act, it could do so until his family actually gets

3    here.  Hopefully, that will be sooner rather than later.

4              THE COURT:  Right.

5              MR. LUSTBERG:  But, your Honor, he wants to face these

6    charges.  He specifically came to face these charges.  He made

7    those arrangements within moments of learning of the

8    indictment.

9              THE COURT:  No, I understand.

10             MR. LUSTBERG:  I think you do understand, your Honor.

11             THE COURT:  Yes.

12             MR. LUSTBERG:  I won't repeat.

13             THE COURT:  All right.  Thank you.

14             I'm going to deny the application for removal of the

15   GPS monitor.  I have no doubt -- I have no reason whatsoever to

16   doubt Mr. Hana's desire to stay here in the United States and

17   to face the charges against him.  I accept that at face value.

18   To what he says, I have no reason to doubt it.  Nonetheless, in

19   light of his substantial assets abroad, the fact that his

20   family is abroad, the fact that he's an Egyptian citizen, the

21   fact that, as far as the Court knows, it's not an extraditable

22   offense with which he's been charged, I do find that the GPS

23   monitor is part of the least restrictive conditions, or

24   combination of conditions that will reasonably assure his

25   appearance here in the United States.  So I'm going to deny the

NA25menC

1    request for modification of bail.

2           Let's move on to the arraignment of four of the

3    defendants on the superseding indictment, and then we'll

4    proceed to the Curcio hearing.  I think Mr. Lustberg

5    foreshadowed that by saying he's not here to testify.  So we'll

6    get into that in the Curcio hearing.

7           Let's start then with Mrs. Menendez.

8           Mrs. Menendez, would you rise, please?

9           State your name, please.

10           DEFENDANT NADINE MENENDEZ:  Nadine Menendez.

11           THE COURT:  Mrs. Menendez, have you received a copy of

12    the superseding indictment S-1 23 CR 490 in this case?

13           DEFENDANT NADINE MENENDEZ:  Yes, I have.

14           THE COURT:  Have you read it?

15           DEFENDANT NADINE MENENDEZ:  Yes, I have.

16           THE COURT:  Did you discuss it with your attorney?

17           DEFENDANT NADINE MENENDEZ:  Yes, I have.

18           THE COURT:  Did he answer the questions, if any, that

19    you had?

20           DEFENDANT NADINE MENENDEZ:  Yes.

21           THE COURT:  You have the right, Mrs. Menendez, to have

22    me read that superseding indictment in open court.  Similarly,

23    you have the right to waive my reading, in which event I won't

24    read it.

25           Do you want me to read it, or do you wish to waive the

NA25menC

| | |
|---|---|
| 1 | reading of it? |
| 2 | DEFENDANT NADINE MENENDEZ:  I wish to waive the |
| 3 | reading of it. |
| 4 | THE COURT:  All right.  I accept the waiver of the |
| 5 | right to have the superseding indictment read in open court. |
| 6 | How do you plead to the charges against you in that |
| 7 | superseding indictment, guilty or not guilty? |
| 8 | DEFENDANT NADINE MENENDEZ:  Not guilty, your Honor. |
| 9 | THE COURT:  I accept your plea of not guilty. |
| 10 | Thank you, Mrs. Menendez.  You may be seated. |
| 11 | Mr. Hana. |
| 12 | DEFENDANT HANA:  Yes, your Honor. |
| 13 | THE COURT:  What is your name, sir? |
| 14 | DEFENDANT HANA:  Wael Hana. |
| 15 | THE COURT:  Have you received a copy of the |
| 16 | superseding indictment in this case? |
| 17 | DEFENDANT HANA:  Yes, your Honor. |
| 18 | THE COURT:  Did you read it? |
| 19 | DEFENDANT HANA:  Yes, your Honor. |
| 20 | THE COURT:  Did you discuss it with your attorney? |
| 21 | DEFENDANT HANA:  Yes, your Honor. |
| 22 | THE COURT:  Did he answer any questions you may have |
| 23 | had about it? |
| 24 | DEFENDANT HANA:  Yes, your Honor. |
| 25 | THE COURT:  You have the right to have me read that |

NA25menC

1      superceding indictment, and if you don't want me to, I won't.

2      What's your pleasure?

3              DEFENDANT HANA:  I don't want you to.  Thank you.

4              THE COURT:  All right.  I accept that as a knowing and

5      voluntary waiver of the right to have the superseding

6      indictment read in open court.

7              How do you plead to the charges against you in that

8      instrument, sir, guilty or not guilty?

9              DEFENDANT HANA:  Not guilty.

10             THE COURT:  I accept your plea of not guilty, sir.

11             Thank you.  You may be seated.

12             DEFENDANT HANA:  Thank you, your Honor.

13             THE COURT:  Mr. Uribe.  What is your full name, sir?

14             DEFENDANT URIBE:  Jose Uribe.

15             THE COURT:  Have you received a copy of the

16     superseding indictment S-1 23 CR 490?

17             DEFENDANT URIBE:  Yes, your Honor.

18             THE COURT:  Did you read it, sir?

19             DEFENDANT URIBE:  Yes, your Honor.

20             THE COURT:  Did you discuss it with your attorney?

21             DEFENDANT URIBE:  Yes, your Honor.

22             THE COURT:  Did he answer any questions you may have

23     had about it?

24             DEFENDANT URIBE:  Yes, your Honor.

25             THE COURT:  As you heard when I did the arraignment

NA25menC

 1    for the other defendants, you have the right to have me read

 2    that superseding indictment in open court, but if you don't

 3    want me to, I won't.

 4           What would you like?

 5           DEFENDANT URIBE:  I don't want you to, sir.

 6           THE COURT:  All right.  I accept that as a knowing and

 7    voluntary waiver of the right to have the superseding

 8    indictment read in open court.

 9           Mr. Uribe, how do you now plead to the charges against

10    you in that superseding indictment, guilty or not guilty?

11           DEFENDANT URIBE:  Not guilty, your Honor.

12           THE COURT:  I accept your guilt -- your not guilty

13    plea, sir.  I accept your not guilty plea.

14           Thank you.  You may be seated.

15           Now, when I was reading the indictment, I thought you

16    pronounced your name Daibes, but apparently it's --

17           DEFENDANT DAIBES:  Daibes.

18           THE COURT:  Daibes.  All right.  Mr. Daibes, what is

19    your full name, sir?

20           DEFENDANT DAIBES:  Fred Daibes.

21           THE COURT:  Mr. Daibes, have you received a copy of

22    the superceding indictment S-1 23 CR 490?

23           DEFENDANT DAIBES:  Yes, sir.

24           THE COURT:  Did you read it, sir?

25           DEFENDANT DAIBES:  Yes, I did.

NA25menC

| 1 | THE COURT:  Did you discuss it with your attorney? |

1          THE COURT:  Did you discuss it with your attorney?

2          DEFENDANT DAIBES:  Yes, I did.

3          THE COURT:  Did he answer any questions you may have

4     had about it?

5          DEFENDANT DAIBES:  Yes, he did.

6          THE COURT:  Now, as you've heard, you have the right

7     to have me read that instrument in open court.

8          Do you want me to read it or no?

9          DEFENDANT DAIBES:  No, I do not.

10          THE COURT:  All right.  I accept that as a knowing and

11     voluntary waiver of the right to have the superseding

12     indictment read in open court.

13          How do you plead to the charges against you in the

14     superseding indictment, sir, guilty or not guilty?

15          DEFENDANT DAIBES:  Not guilty.

16          THE COURT:  I accept your plea of not guilty.

17          Thank you, Mr. Daibes.  You may be seated.

18          All right.  That is the arraignment on four of the

19     five defendants, and we have a date for the arraignment of

20     Mr. Menendez.

21          Let's now proceed to the Curcio hearing.

22          MR. MONTELEONI:  Your Honor, before we proceed to the

23     Curcio --

24          THE COURT:  Yes.

25          MR. MONTELEONI:  -- may I make an application with

NA25menC

```
 1   respect to the Speedy Trial Act?

 2              THE COURT:  Yes.

 3              MR. MONTELEONI:  The government moves to exclude the

 4   time between now and the trial date of May 6, 2024, under the

 5   Speedy Trial Act.  We believe that this exclusion will be in

 6   the interest of justice, because the exclusion would allow the

 7   defendants to review the discovery that we have been producing

 8   and that we will be continuing to produce, to allow the

 9   defendants to consider and file motions, and the parties to

10   prepare for trial, and potentially to discuss the disposition

11   of the case.

12              THE COURT:  All right.  Thank you.

13              I think we already have a Speedy Trial exclusion on

14   the record until then, but there's no harm in doing it again.

15              Let me hear the position of each of the defendants.

16              Mr. Menendez's attorney.

17              MR. KOLANSKY:  Yes, your Honor.  We have no objection

18   to the exclusion of time.

19              THE COURT:  Mrs. Menendez.

20              MR. ONORATO:  Your Honor, again, no objection.

21              THE COURT:  Mr. Hana.

22              MR. LUSTBERG:  No objection, your Honor.  Thank you.

23              THE COURT:  Mr. Uribe.

24              MR. FETTERMAN:  No objection, your Honor.

25              THE COURT:  Mr. Daibes.
```

NA25menC

1          MR. FINZI:  No objection, your Honor.

2          THE COURT:  All right.  With the government having

3    moved for an exclusion of time from today until May 6 from

4    calculation under the Speedy Trial Act, and with each of the

5    defendants' attorneys stating that they have no objection, I

6    hereby exclude time from today until May 6, 2024, from Speedy

7    Trial Act calculation.  I make the finding that this

8    continuance serves to ensure the effective assistance of

9    counsel, and to prevent any miscarriage of justice.

10          I also find that the ends of justice served by this

11    continuance outweigh the best interest of the public and of

12    each of the five defendants in a speedy trial.  This is an

13    (h)(7)(A), interest of justice, exclusion.  The reason is to

14    enable the government to continue its production of documents,

15    and for the parties to attempt to resolve this consensually if

16    they so desire.

17          All right.  The exclusion is, again, from today until

18    May 6 of next year.

19          All right.  Let you now proceed to the Curcio hearing.

20          MR. FINZI:  Your Honor.

21          THE COURT:  Yes, sir.

22          MR. FINZI:  I'm sorry.  It is my understanding this is

23    a separate proceeding, that the presence of all the other

24    defendants isn't necessary.

25          THE COURT:  That is correct.  The other defendants do

NA25menC

1    not have to stay.

2              MR. FINZI:  Okay.  So I don't want to be

3    disrespectful, but I'm going to advise my client that we can go

4    now.

5              THE COURT:  Good-bye.  Come again, when summoned.

6              (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25