THE LAW FIRM OF

# CÉSAR DE CASTRO, P.C.

ATTORNEY AT LAW

The District
111 Fulton Street - 602
New York, New York 10038
631.460.3951 Office
646.285.2077 Mobile
646.839.2682 Fax
cdecastro@cdecastrolaw.com
cdecastrolaw.com

November 27, 2024

*Via* **ECF**

The Honorable Sidney H. Stein
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:   *United States v. Menendez, et al.,* 23 Cr. 490 (SHS)
>        <u>Daibes Letter Motion Re: Improper Evidence Before Jury</u>

Dear Judge Stein,

We submit this letter-motion in response to the government's November 13, 2024 letter, in which it advised and admitted to the Court that portions of evidence that this Court had excluded as violative of Senator Menendez's Speech and Debate protections was nonetheless submitted to the jury. The improper portions provided to and likely viewed by the jury was, as the government characterized it, "critical" evidence of a bribery scheme involving Senator Menendez and Messrs. Daibes and Hana regarding Egypt. The circumstances of how this improper evidence was provided to the jury, while important, are almost irrelevant and distract from the central and undeniable conclusion that the jury had improper evidence before it and presumably reviewed that underlying evidence, as was its obligation. The government has asked the Court to draw the conclusion, without any convincing support, that the jury did not review the improper evidence over the more than two days it was deliberating, but instead relied upon the government's summary charts. The Court should reject this assumption and conclude that, without some credible and reliable evidence of that assumption, this evidence was improperly before the Court and reviewed by the trial jury.[1]

Additionally, and more troubling as it relates to Mr. Daibes, is an additional piece of evidence improperly before the jury during its deliberations *not mentioned* in the government's letter. It

---

[1] To avoid lengthy and duplicative briefing on these issues, Mr. Daibes joins in the arguments of Senator Menendez and Mr. Hana on these issues and submits this letter-brief to highlight the issues most central and relevant to Mr. Daibes.

appears that the government also improperly loaded to the jury's laptop an exhibit associated with Mr. Daibes that referenced Adolf Hitler which should also have been redacted.

Accordingly, this Court should conclude that the government's errors deprived Mr. Daibes of a fair trial, vacate his conviction, and grant him a new trial in which the jury will receive and review only the evidence that was properly admitted by the Court.

In all criminal cases, all defendants are afforded due process.  As the Supreme Court has stated, "due process means a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217, 71 L. Ed. 2d 78, 102 S. Ct. 940 (1982).  If a jury is shown evidence that was not admitted at trial, when determining if a new trial is warranted, courts must "start with a presumption of prejudice from a jury's exposure to extra-record evidence." *United States v. Al-Farekh*, 810 F. App'x 21, 26 (2d Cir. 2020) (internal citations omitted).  The government may rebut this presumption by "showing that the extra-record information was harmless." *United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011) (quotation marks omitted).  When considering whether the extra-record information was harmless, the Court must consider the "(1) the nature of the information or contact at issue, and (2) its probable effect on a hypothetical average jury." *Id.* at 169.

### I.     A Tenth Exhibit Was Improperly Before the Jury and Prejudiced Mr. Daibes

Based on our comparison of the files the government has said it loaded to the jury's laptop versus our copies of the admitted trial exhibits, it appears that the government also improperly loaded to the jury's laptop an unredacted version of Government Exhibit 3D-1, which contained a reference to Adolf Hitler.  The exhibit is a text message thread in which Mr. Daibes makes reference to sending an article regarding the "Hitler car" to one of the Qataris.  The admitted version of Government Exhibit 3D-1 redacted the obviously prejudicial reference to Hitler, however, the government loaded onto the jury's laptop the unredacted version of that text thread.

This incredibly prejudicial reference to Hitler in Government Exhibit 3D-1 that was before the jury and we should presume it reviewed, was unquestionably prejudicial to Mr. Daibes and alone warrants a new trial.  The jury, upon reviewing that email would have certainly been shocked and worse, would have reviewed that text thread without knowing the truth behind that reference – Mr. Daibes had purchased an antique Mercedes Benz that he was going to refurbish and that, upon inspection by mechanics and some internet research, was believed to be commissioned by Adolf Hitler himself or utilized by his generals.  The car was sent to Mercedes Benz headquarters for review, authentication, and work where it remains today.

The prejudice to Mr. Daibes could not be more obvious.  A Palestinian-born American citizen, conversing with an Arab, and making reference to Adolf Hitler would certainly lead a contemporary jury to question his character.  Presumably, the government's response to this critical error will again be that the Court should presume, without any evidence, that the jury did not review any of the underlying exhibits and instead only relied upon the government's summary chart that did not include the reference to Adolf Hitler.  However, as was made clear by the Court several times to the government and the jury, the government was simply highlighting, through the use of its summary charts, certain evidence.  However, all the evidence would be presented to it during deliberations in order for it to review and fulfill its obligations to fairly try the case and render a fair and impartial verdict.  *See* Trial Transcript in *United States v.*

2

*Menendez, et al.,* 23 Cr. 490 (SHS) ("TT") at 1279.  Here the Court stated to the parties regarding the government's presentation of its evidence *via* summary charts:

> I don't disagree with that, but I think there's some merit to Mr. Weitzman's point to the extent that you have him read aloud both the document sent to him and then the document that's sent out by him.  And instead, you really can ask this witness, I think, are they essentially identical, without having to go through twice what they, in fact, have, especially because, if I understand it correctly, you've got the underlying documents in evidence.  You can argue in summation from those documents.  I'm not disagreeing with the way you're going about it, but I am agreeing with Mr. Weitzman that there's some unnecessary repetition, especially when you have the witness, who seems to understand where you're going each time."

The Court later, on the same topic of exhibits and the summary charts being in evidence:

> "I also think -- this is your case -- but it seems to me a lot of this can be saved for summation.  The jury isn't really going to remember each and every one of the two minute, 47 second calls and so forth and you are probably far better off, now that you have them in evidence, referring to them in your summation."

TT at 2436.

Even the government, in its summation, encouraged the jury to review all of the underlying exhibits to its summary charts when it stated:

> "The exhibits in this chart are everything you need to prove the corrupt *quid pro quo*.  You've heard the evidence, but if you want to see it again, you can write down the number of this chart and then look at every exhibit in it that you want."

TT at 6401.

If we are to presume anything, especially of this jury, it is that it reviewed all of the evidence.[2] After all what else should we presume they were doing for more than two days while deliberating?

Mr. Daibes was entitled to a jury that fairly decided his case based solely on the evidence presented at trial.  The jury was improperly provided with an extremely inflammatory and prejudicial exhibit that deprived him of that right.  It is hard to conceive of a human being in modern times more universally abhorred than Adolf Hitler.  Any jury, hypothetical or not, seeing an unredacted version of Government Exhibit 3D-1 would be prejudiced against Mr. Daibes which was precisely why the government agreed to and did redact that portion of the exhibit that was admitted at trial.  The fact that the error was inadvertent is unfortunate for the government,

---

[2]  Even the Court commented during trial about how conscientious it seemed this jury was.  Not only was the jury generally timely during ten weeks of trial, but a majority of the jurors appeared to be fully engaged during the presentation of evidence.  *See* TT at 7052 ("And I want to tell you, as I have said before, you, as a jury, have been, from outward appearances, very attentive to the witnesses and the testimony here.")

but this Court should conclude that it was a critical and costly mistake and order Mr. Daibes' convictions vacated and he be afforded a new trial.

### II. The Nine Exhibits Identified in the Govt's 11/13 Letter Also Prejudiced Mr. Daibes

As noted above, we join in all of the arguments of Senator Menendez and Mr. Hana regarding the portions of the nine exhibits improperly loaded by the government onto the laptop provided to the jury. For all the reasons articulated by Senator Menendez and Mr. Hana, the inclusion of the excluded portions of the exhibits precluded by this Court's Speech and Debate ruling warrant a new trial for all defendants. The inclusion of those exhibits not only prejudiced the Senator, but in this conspiracy case, prejudiced Mr. Daibes. After all, in arguing for reconsideration of the Court's prior ruling, the government noted how "critical" the excluded evidence was to establish the bribery conspiracy relating to Egypt in which Mr. Daibes was charged and convicted. Unfortunately for the government, the import of the evidence to the trial jury cannot be ascertained and to ensure that Mr. Daibes was afforded a fair trial in which the jury considered only the admitted evidence, a new trial is required.

### III. By Checking Exhibit Numbers Against the File Names of the Exhibits Loaded Onto the Jury's Laptop, Mr. Daibes Did Not Waive Any Arguments Regarding the Exhibits Improperly Provided to the Jury

The government's argument that the defendants somehow waived any claims regarding the evidence improperly loaded by the government onto to the jury's laptop should be summarily rejected by the Court. Yes, each defendant was tasked with reviewing the government laptop loaded with all of the government's exhibits as well as the defense exhibits that was to be provided to the jury for its deliberations. However, that task was limited to cross-checking to ensure that no exhibits admitted at trial were inadvertently left off and, conversely, whether any exhibits not admitted by the Court were appropriately excluded from the laptop, the latter of which Mr. Daibes' team did in fact identify a small number of. The admitted government's exhibits numbered close to 3,000, however, they consisted of multiples of that in pages. Neither the government nor the defense were tasked with reviewing each of those pages to ensure that the appropriate versions of the exhibits were provided to the jury. As the Court implored the parties to do several times during trial, the parties worked together to ensure that the jury could review the admitted evidence, nothing more. All counsel are officers of the Court, and each party must presume that the others will execute their duties faithfully. Here, the defense presumed that the government and co-defendant's counsel would only provide the admitted exhibits to be included on the jury's laptop. All the parties missed that these improper portions of the exhibits were included. Holding it against the defendants would be unfair and is not appropriate under the governing caselaw.[3]

---

[3] Our co-counsel effectively distinguish the cases cited by the government in support of its waiver argument. We will not repeat those arguments here. As noted by our co-counsel, none of the cases cited by the government involve the complexity and sheer volume of material with which the parties had to compile and cross-check in this case. None of the government-cited cases involve checking thousands of exhibits that contained many thousands of pages. And none of the cases hold that the defense was required to review each page and line of the thousands of exhibits or risk waiver. In the government's

4

IV.     Conclusion

For all the foregoing reasons, this Court should vacate Mr. Daibes' convictions and order a new trial because the jury's receipt of evidence not admitted during trial deprived Mr. Daibes of due process and a fair trial.

Respectfully submitted,

/s/

César de Castro
Shannon McManus
Seth Agata
Valerie Gotlib

cc:     All Counsel (*via* ECF)

---

view, to ensure Mr. Daibes received a fair trial, the Court should start with and make all presumptions *against* a finding of prejudice – it should presume that the exhibits were not critical to its case (in direct contradiction to its arguments for the exhibits' admission), not reviewed by the jury anyway, and because the defense performed the non-substantive confirmation that each of the government's cited exhibit numbers were in fact admitted and *not* whether the government violated the Court's directives and included portions of exhibits excluded by the Court, we have waived any claims.